1  BILL LOCKYER, Attorney General
    of the State of California
2  DARRYL DOKE, Lead
    Supervising Deputy Attorney General
3  WILLIAM A. KRABBENHOFT (SBN 119197)
    Deputy Attorney General
4  1300 I Street, P.O. Box 944255
    Sacramento, CA  94244-2550
5  Telephone: (916) 324-5334
    Facsimile:  (916) 322-8288
6
   **Attorneys for Defendants Rosanne Campbell**
7  **Glen Douglas, M.D., Mike Knowles, Brett**
   **Williams, M.D., Gilbert Sainz, M.D., and**
8  **Christopher Smith, M.D.**

9              IN THE UNITED STATES DISTRICT COURT

10           FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12  SALVADOR MENA,                    CASE NO. CIV 03-2024 MCE GGH P

13                    Plaintiff,      **MEMORANDUM OF POINTS AND**
                                      **AUTHORITIES IN SUPPORT OF**
14     v.                            **DEFENDANTS' MOTION FOR SUMMARY**
                                      **JUDGMENT, OR IN THE ALTERNATIVE,**
15  MIKE KNOWLES, et al.,            **ADJUDICATION OF ISSUES**

16                   Defendants.      No Hearing Necessary [L.R. 78-230(m)]

17

18                                    **I.**

19                            **INTRODUCTION**

20        Plaintiff Salvador Mena, a state prisoner proceeding in pro se, is incarcerated at

21  Mule Creek State Prison.  Plaintiff's complaint seeks injunctive relief only under 42

22  U.S.C. section 1983 regarding an alleged denial of medical care in violation of the

23  Eighth and Fourteenth Amendments.  Generally plaintiff claims he has been refused

24  specific narcotic pain medication (ms contin) for treatment of alleged prostate cancer

25  pain, Hepatitis C and osteoarthritis.

26        All defendants deny that they were deliberately indifferent to the serious medical

27  needs of plaintiff.  The medical defendants (Drs. Williams, Douglas, Sainz and Smith)

28  unequivocally declare under oath they properly treated Mena, were not indifferent to his

                                       1

1 needs, took no action to intentionally cause him pain and treated him within the

2 standard of care in the community.

3       This should come as no surprise to the Court or plaintiff since the Court's

4 appointed independent medical expert, Dr. Christopher Evans, Associate Professor of

5 Urology at UC Davis Med Center, essentially concluded the same.  After reviewing over

6 700 pages of medical records and discussing plaintiff's case with the UC Davis Cancer

7 Center Genitourinary Tumor Board, Dr. Evans and the Board ultimately conclused that

8 plaintiff has received "appropriate care" .

9       In short, defendants submit they have conclusively proved they have not violated

10 the rights of plaintiff and have provided him with appropriate care such that summary

11 judgment should be entered in their favor and plaintiff denied any injunctive relief.

12                                      **II.**

13                          **STATEMENT OF FACTS**

14       Plaintiff Salvador Mena is an inmate incarcerated at Mule Creek State Prison in

15 Ione, California.  Plaintiff has filed a 42 U.S.C. section 1983 action against defendants

16 for injunctive relief only.  The basis of plaintiff's complaint is the pain medication or lack

17 thereof, being given to him by the doctors at Mule Creek State Prison.

18       Plaintiff was diagnosed with Prostatic Adencarcinoma in July of 1998.  On

19 October 10, 2000, plaintiff was referred to an outside consultant, Dr. Walter Schimon,

20 regarding his prostate cancer.  The report stated that a recent bone scan showed no

21 evidence of metastasises concerning the disease.  Dr. Schimon's report noted that

22 plaintiff may be addicted to M.S. Contin, and that plaintiff  "refuses all treatment for any

23 type of cure."   Dr. Schimon recommended plaintiff have periodic prostatic specific

24 antigens done about every six months.  (Exh. D to the first Decl. of Dr. Smith.)[1/]

25 / / /

26 / / /

27

28       1. "First Declaration of Dr. Smith" refers to the declaration of Christopher Smith, M.D., filed in support of defendant's response to plaintiff's motion for restraining order and preliminary injunction" which is attached as Exhibit H to the declaration of William A. Krabbenhoft.

1    On or about November 2000, plaintiff was referred to Dr. John H. Friend, a pain

2 specialist, for an electromyographic examination regarding his complaint of rectal,

3 genital, peroneal, and right thigh pain.  Dr. Friend prepared a report dated  November

4 29, 2000,  which stated the results of the examine showed no evidence of right femoral

5 nerve cell damage, or motor nerve injury, and the nerves were considered to be

6 functioning within normal limits.  In a report prepared by Dr. Christopher Smith, he notes

7 that Dr. Friend recommended detoxing plaintiff from the M.S. Contin since the

8 evaluation does not substantiate any source of pain.  (See First Decl. of Dr. Smith, ¶ 6.)

9    On July 25, 2001, plaintiff received a whole body scan which was negative for

10 metastatic of cancer disease, but was suggestive of arthritis in his right knee.  (See

11 Exhibit E, to first Decl. of Dr. Smith.)  Plaintiff is currently receiving 325 milligrams of

12 Aspirin for his osteoarthritis pain.  Such treatment has been deemed sufficiently

13 effective by Dr. Smith. (See first Decl. of Dr. Smith, ¶ 9.)

14    On June 10, 2003, plaintiff was examined by Dr. Walter Schimon who

15 recommended hormone therapy to treat plaintiff's complaint of pain.  Again, plaintiff

16 refused any treatment for the prostate cancer.  (See Exhibit F to first Decl. of Dr. Smith.)

17    On September 8, 2003, plaintiff again received a whole body bone scan which

18 was negative for metastatic disease.  (See Exhibit G to first Decl. of Dr. Smith.)

19    Dr. Smith treated plaintiff over an eighteen month period and also reviewed a

20 number of plaintiff's 602 inmate appeal complaints regarding medical treatment and

21 pain medication.  As such, Dr. Smith is well qualified and knowledgeable to offer facts

22 and opinions about the medical treatment of plaintiff.  Dr. Smith's professional opinion is

23 that plaintiff cannot possibly suffer from pain related to prostate cancer since the cancer

24 was microscopic and had not spread.  The proper treatment for plaintiff's cancer

25 is either hormonal treatment or local radiation - both of which plaintiff has refused for

26 years – instead only wanting morphine for his alleged pain.  (First Decl. of Dr. Smith,

27 ¶¶ 3, 4, & 5; second Decl. of Dr. Smith, ¶¶ 1-7.)

28    Further, Dr. Smith's professional opinion is that the pain plaintiff allegedly suffers

3

1   from, whether it be from cancer, Hepatitis C or osteoarthritis, is properly treated by non

2   narcotic medications such as aspirin or Motrin.  Dr. Smith notes that plaintiff was

3   evaluated by Dr. Friend, a local Sacramento doctor who is a pain specialist.  Dr. Friend

4   recommended plaintiff be taken off the M.S. Contin because Dr. Friend did not

5   substantiate any source of pain claimed to be suffered by plaintiff.  (First Decl. of Dr.

6   Smith, ¶¶ 6-9.)

7         Dr. Smith's opinion is that plaintiff has been provided more than adequate

8   medical care while incarcerated at Mule Creek State Prison.  Dr. Smith's professional

9   opinions is that plaintiff has been provided appropriate pain medication for all of his

10  complaints of pain.  Dr. Smith agrees with the opinion of the Court's independent

11  medical expert, Dr. Evans, that plaintiff received appropriate care at Mule Creek.

12        Dr. Glen Douglas also treated and examined plaintiff on several occasions from

13  August of 2000 to August of 2003.  Dr. Douglas' professional opinion, like that of the

14  Court's independent medical expert, is that plaintiff is not suffering from pain related to

15  symptomatic of prostate cancer.  It is also Dr. Douglas' professional opinion that Motrin

16  or Aspirin should be sufficiently effective to treat any osteoarthritis pain plaintiff may

17  have.  Dr. Douglas further declares he provided plaintiff with effective pain medication

18  according to assessed clinical needs an adequate medical care consistent with the

19  community.  Dr. Douglas never intentionally or knowingly caused plaintiff pain and was

20  not deliberately indifferent to plaintiff's medical needs.  Dr. Douglas also agrees with the

21  opinions expressed by Dr. Evans, the Court's appointed medical expert.  (Douglas

22  Decl., ¶¶ 1-9.)

23        Defendant Dr. Brett Williams is the Chief Medical Officer /Health Care Manager

24  at Mule Creek State Prison.  Dr. Williams prescribed medication (MS Contin) to plaintiff

25  from March 2003 to August 2003, then discontinued the medication after reading Dr.

26  Friend's report.  Dr. Williams provided plaintiff with effective pain medication and

27  medical care consistent with community standards.  At no time, did Dr. Williams refuse

28  to provide plaintiff with care and treatment and never intentionally or knowingly cause

4

1   plaintiff pain.  Dr. Williams denies ever being deliberately indifferent to plaintiff's medical

2   needs.  Dr. Williams also agrees with opinions expressed by Dr. Evans, the Court's

3   appointed independent medical expert, that plaintiff has received appropriate medical

4   care at Mule Creek State Prison.  (Williams Decl., ¶¶ 1-5.)

5       Defendant Gilbert Sainz is now retired from state service and has no control or

6   authority over the medical care and treatment provided to plaintiff.  Dr. Sainz was

7   employed at Mule Creek State Prison as a physician and surgeon from November 1997

8   to June 2002.  During this time, Dr. Sainz provided plaintiff with adequate medical care

9   consistent with community standards.  Dr. Sainz never refused to provide plaintiff with

10  care or treatment that was warranted nor never knowingly or intentionally caused

11  plaintiff pain or disregarded a risk of harm.  Dr. Sainz was not deliberately indifferent to

12  plaintiff's medical needs.  Dr. Sainz also agrees with the opinions expressed by Dr.

13  Evans, the court appointed independent medical expert.  (Sainz Decl., ¶¶ 1-7.)

14      Defendant Mike Knowles is now retired from the state and has no control or

15  authority over the medical care and treatment provided to plaintiff.  Knowles was

16  Warden at Mule Creek State Prison from October 2000 to September 2003.  During this

17  time, Knowles never knowingly or intentionally caused plaintiff any pain.  Knowles never

18  knowingly or intentionally disregarded any risk of harm or injury to plaintiff.  Knowles

19  was never deliberately indifferent to plaintiff's medical needs.  (Knowles Decl., ¶¶ 1-5.)

20      Defendant Rosanne Campbell is the current acting Warden of Mule Creek State

21  Prison.  Ms. Campbell is not a medical doctor and does not provide medical care or

22  treatment to inmates.  Ms. Campbell has no control or authority over medical care and

23  treatment provided to inmates.  The Chief Medical Officer/Health Care Manager has

24  final authority over medical care and treatment of inmates.  Ms. Campbell never

25  knowingly or intentionally caused plaintiff pain, disregarded any risk of harm or was

26  deliberately indifferent to plaintiff.  Ms. Campbell has never known of any need for

27  plaintiff to receive medical care or treatment.  (Campbell Decl., ¶¶ 1-4.)

28      Via order filed March 14, 2005, this Court appointed an independent medical

expert, Dr. Christopher A. Evans, an urological surgical oncologist at the UC Davis Med

Center, to review plaintiff's medical records to determine if plaintiff's medical needs and

complaints of pain were being properly treated.  This arose in conjunction with plaintiff's

motion for a preliminary injunction.  After a thorough and comprehensive review of said

records, and after discussing the case with the UC David Cancer Center Genitourinary

Tumor Board, Dr. Evans concluded plaintiff has received appropriate care and that the

administration of narcotics would be inappropriate for treatment of plaintiff's pain.  Dr.

Evans and the Board also concluded it was unlikely plaintiff has prostate cancer

metastasis and that it is extremely remote in the absence of metastasis that plaintiff is

having any pain.  Dr. Evans and the Tumor Board also noted it was unlikely plaintiff's

arthritis and generative joint disease would cause the degree of pain requiring narcotics.

(Exh. G, Dr. Evans report to court.)

### III.

### ARGUMENT

### A.    STANDARDS GOVERNING A MOTION FOR SUMMARY JUDGMENT

The motion for summary judgment provides a procedure for terminating without

trial actions in which "there is no genuine issue as to any material fact and ... the moving

party is entitled to judgment as a matter of law."  Federal Rules of Civil Procedure Rule

56(c).  A party opposing a motion for summary judgment has the burden of affirmatively

coming forward with sufficient evidence to support its claims or defenses, thus creating

a genuine issue of material fact for trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).

"The plain language of Rule 56(c) mandates the entry of summary judgment, ..., against

a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at

trial."  *Celotex, supra* at p. 322.

Summary judgment is not a disfavored remedy.  Indeed, "summary judgment

procedure is properly regarded not as a disfavored procedural shortcut, but rather as an

integral part of the federal rules as a whole, which are designed 'to secure the just,

1  speedy and inexpensive determination of every action.'"  *Celotex, supra* at p. 327,

2  citing F.R.C.P. 1.

3  　　It is the moving party's burden to identify those portions of the pleadings,

4  discovery and affidavits demonstrating the absence of a genuine issue of material fact.

5  The moving party discharges this burden by showing "that there is an absence of

6  evidence to support the non-moving party's case" and therefore that the moving party is

7  entitled to judgment as a matter of law.  *Celotex, supra* at p. 325.  Here, there is an

8  absence of evidence that any defendant was deliberately indifferent to plaintiff and that

9  plaintiff is entitled to any injunctive declaratory relief.

10  　　**B.　　THE EIGHTH AMENDMENT STANDARD**

11  　　The "deliberate indifference" standard involves an objective and a subjective

12  prong.  First, the deprivation must be, in objective terms, "sufficiently serious." *Wilson v.*

13  *Seiter*, 501 U.S. 294, 298 (1992);  *Hudson v. McMillian*, 503 U.S. 1, 5-6 (1992).

14  Second, the prison official must act with a "sufficiently culpable state of mind" equivalent

15  to criminal recklessness, such as when a defendant "knows of and disregards an

16  excessive risk to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 837

17  (1994); *see also*, *Redman v. County of San Diego*, 942 F.2d 1435, 1443 (9th Cir. 1991).

18  　　The second prong "requires that the official be subjectively aware of the risk; it is

19  not enough that the official objectively should have recognized the danger but failed to

20  do so." *Jeffers v. Gomez*, 267 F.3d 897, 914 (9th Cir. 2001) (*quoting Farmer v. Brennan*,

21  511 U.S. 825, 837 (1994).  "[T]o prevail on the Motion for Summary Judgment, [a

22  plaintiff] must "'put forward specific, nonconclusory factual allegations" that establish

23  improper motive causing cognizable injury.' [Citations.] Thus [a plaintiff]

24  must allege facts in this case that demonstrate that [defendants engaged in wrongful

25  conduct] because of an unconstitutional motive or state of mind."  *Jeffers*, 267 F.3d at

26  911.)

27  　　To constitute cruel and unusual punishment, a defendant's conduct toward a

28  prison inmate "must involve more than ordinary lack of due care for the prisoner's

7

interests or safety." *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 1084 (1986).

Mere negligence is not a sufficient basis to impose liability on a defendant under

Section 1983. *Davidson v. Cannon*, 474 U.S. 344, 348 (1986).  The Ninth Circuit has

also acknowledged that "deliberate indifference" is a higher standard than gross

negligence. *Wood v. Ostrander* 879 F.2d 583, 588 (9th Cir. 1989).  "It is obduracy and

wantonness, not inadvertence or error in good faith, that characterize the conduct

prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs

in connection with establishing conditions of confinement, supplying medical needs, or

restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 106 S.Ct. at

1084.

"[A] complaint that a physician has been negligent in diagnosing or treating a

medical condition does not state a valid claim of medical mistreatment under the Eighth

Amendment.  Medical malpractice does not become a Constitutional violation merely

because the victim is a prisoner." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 459

(9th Cir. 1980); *see also Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990)

(prison guard confiscated medical sling over inmate's protests which caused surgical pin

in shoulder to dislodge and two month delay in removing floating pin in shoulder did not

establish a constitutional violation); *Frost v. Agnos*, 152 F3d 1124, 1130 (9th Cir. 1998)

(delays in administering pain medication, treating broken nose and providing

replacement crutch did not constitute deliberate indifference); *O'Loughlin v. Doe*, 920

F.2d 614, 617 (9th Cir. 1990) (repeated failures to supply inmate with aspirin and antacid

to alleviate headaches, nausea and pain may be neglect, but does not rise to level of

unnecessary and wanton infliction of pain).)  Where a difference of opinion as to

diagnosis and treatment is shown, no violation is established.  *Shields v. Kunkle*, 442

F.2d 409, 410 (9th Cir. 1971); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981);

*Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

## C.   EACH DEFENDANT WAS NOT DELIBERATELY INDIFFERENT TO PLAINTIFF'S MEDICAL NEEDS

1    In the instant case, plaintiff cannot prove that any defendant was aware of

2 significant risk of injury to plaintiff, or failed to treat plaintiff's complaints of pain.  To the

3 contrary, the evidence shows the medical defendants responded in their best medical

4 judgment to plaintiff's complaints of pain and prescribed medicine each felt appropriate

5 for plaintiff's various ailments (real or imagined).  At all times, the medical defendants

6 provided plaintiff with care consistent with community standards.  At no time did any

7 defendant deny plaintiff care or treatment which was medically necessary or

8 appropriate.  (UMF Nos. 1-7.)

9    The real issue in this case is plaintiff's denial of his cancer situation and his

10 disagreement with the doctors about whether the use of a morphine based drug named

11 MS Contin should be prescribed to him.  As this court well knows, a difference of

12 opinion concerning appropriate treatment cannot be the basis of an Eighth Amendment

13 violation.  *Jackson v. McIntosh*, 90 F.3d 330 (9th Cir. 1996); *Franklin v. Oregon*, 662

14 F.2d 1337, 344 (9th Cir. 1981).

15    Moreover, the undisputed facts and evidence clearly show the best course of

16 treatment for plaintiff's complaints of pain is non-narcotic pain medication.  While the

17 evidence shows plaintiff had been diagnosed with prostate cancer in 1998, the evidence

18 also shows there is no evidence of prostate cancer metastasis.  Thus, there is no

19 evidence plaintiff suffers from any pain requiring the use of narcotics.  (See Dr.

20 Evan's letter to the Court; Second Smith Decl., ¶¶ 3-7; Williams Decl., ¶¶ 3-4; Douglas

21 Decl., ¶¶ 6-8.)[2]

22 / / /

23 / / /

24 / / /

25

26    In short, the evidence shows plaintiff has been properly treated for all of her

27 _____

28    2.  This is consistent with the conclusion of Dr. John Friend, a pain specialist doctor, who examined plaintiff in 2000 and found no physical findings consistent with plaintiff needing pain medication.  (Exh. B, to first Smith Decl.)

9

1    complaints of pain and has not been subjected to the unnecessary and wanton infliction

2    of pain.  There is no evidence that any defendant possessed culpable state of mind and

3    knew plaintiff faced a substantial risk of harm and simply ignored it.  To the contrary,

4    each medical defendant states that plaintiff was provided with effective pain medication

5    and adequate medical care consistent with the standard in the community.

6         The evidence further shows that plaintiff's complaints of pain can be properly

7    treated by non-narcotics such as Aspirin or Motrin.  (Second Smith Decl., ¶¶ 4-6;

8    Douglas Decl., ¶¶ 5-8; Exh. G, Dr. Evans report to the court.)  The evidence also shows

9    that plaintiff is not suffering from pain related to the Hepatitis C virus as plaintiff does not

10    exhibit a clinical picture consistent with active Hepatitis C.  (Exhs. C & H to first

11    declaration of Dr. Smith; second Smith Decl., ¶ 5.)

12         The evidence further shows that defendants Sainz and Knowles are now retired

13    from state service and have no control or authority over medical care being provided to

14    plaintiff.  (Sainz Decl., ¶ 3; Knowles Decl., ¶ 3.)  The evidence also shows that the

15    current warden, defendant Rosanne Campbell who was substituted into the case by the

16    court, has no authority or control over the medical care and treatment provided to

17    inmates.  (Campbell Decl., ¶ 3.)

18    **CONCLUSION**

19         The evidence shows that all medical defendants provided plaintiff with

20    reasonable and necessary care in an effort to treat plaintiff's complaints of pain.  No

21    defendant was deliberately indifferent to any medical need of plaintiff.  Even the court's

22    independent medical expert opined that plaintiff received appropriate care at Mule

23    Creek.  No more is required.  This case amounts to nothing more than plaintiff's

24    difference of opinion regarding treatment, which is insufficient as a matter of law to state

25    an Eighth Amendment claim.

26    / / /

27    / / /

28

1    Accordingly, for all the forgoing reasons, defendants submit summary judgment

2    should be entered in their favor.

3    Dated:  June 29, 2006                    Respectfully submitted,

4                                             BILL LOCKYER, Attorney General
                                                of the State of California
5                                            DARRYL L. DOKE, Lead
                                                Supervising Deputy Attorney General
6

7                                            **/S/ WILLIAM A. KRABBENHOFT**

8                                            WILLIAM A. KRABBENHOFT
                                             Deputy Attorney General
9

10

11

12

13

14

15

16

17

18
     10254784.wpd
19

20

21

22

23

24

25

26

27

28

1

**DECLARATION OF SERVICE**

2

Case Name: **Salvador Mena v. Mike Knowles, et al.**
Case Number**:       CIV-S-03-2024 MCE GGH P**

3

I declare:

4

5          I am employed in the Office of the Attorney General, which is the office of a
member of the Bar of this Court at which member's direction this service is made.  I am
18 years of age or older and not a party to the within entitled cause.  On **June 30, 2006**,
6   I placed the attached

7   **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, ADJUDICATION
OF ISSUES**

8

9   and served in the method described below:

10   _XXX_  **First Class Mail**.  Placed a true copy in a sealed envelope, postage thereon fully prepaid.
That I am readily familiar with the business practice at the Office of the Attorney General for
11          collection and processing of correspondence for mailing with the United States Postal Service.  In
accordance with that practice, correspondence placed in the internal mail collection system at the
12          Office of the Attorney General is deposited with the United States Postal Service that same day in
the ordinary course of business.
13   _____  **Facsimile Transmittal**.  That on the date shown above, I sent by facsimile machine a true
copy of the above-mentioned document(s) to the person(s) and at the facsimile number indicated
14          below.
_____  **Personal Service**.  That I handed a true copy to each person indicated below.
15   _____  **California Overnight and/or UPS Overnight Service**.  Placed a true copy in a
sealed envelope, with delivery charges pre-paid, addressed as indicated below, to be delivered
16          by next day air.

17   addressed as follows:

18

19   Salvador Mena (C-27575)
Mule Creek State Prison
P.O. Box 409000, A-1-148-L
20   Ione, CA 95640-9000

21

22          I declare under penalty of perjury the foregoing is true and correct and that this
declaration was executed on June 30, 2006, at Sacramento, California.
23

24

25                                           /s/ Debra De Frantz

26                                           _____
                                           DEBRA De FRANTZ

27

28